IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| JOHN BEAIRD | § | |
| --- | --- | --- |
| Petitioner, | § | |
| VS. | § | |
| LOLA BROWN, Community Corrections Manager, Federal Bureau of Prisons | § | NO. 3-07-CV-2077-B |
| Respondent. | § | |

# FINDINGS AND RECOMMENDATION OF THE
# UNITED STATES MAGISTRATE JUDGE

Petitioner John Beaird, a federal prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons stated herein, the application should be denied.

## I.

In 2003, petitioner was convicted of wire fraud and sentenced to 60 months confinement. After serving 90% of his sentence in a federal prison, petitioner was transferred to a halfway house on September 27, 2007. He is currently scheduled for release on February 29, 2008. According to petitioner, the Bureau of Prisons ("BOP") has categorically denied his request for transfer to home confinement pursuant to an "unlawful unwritten policy" restricting such placement to inmates who are within the last 40 to 50 days of their sentence. Petitioner argues that he is entitled to an individualized review of his transfer request as a matter of due process.

## II.

A threshold requirement to any due process claim is the existence of a constitutionally protected liberty interest. *See Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir.), *cert. denied*, 118

S.Ct. 559 (1997) (citing cases). In the prison context, a liberty interest may be created either under the Due Process Clause or by statute. *See Richardson v. Joslin*, 501 F.3d 415, 419 (5th Cir. 2007) (citing cases). The Due Process Clause creates a liberty interest in punishment that is not "qualitatively different from the punishment characteristically suffered by a person convicted of a crime." *Id., quoting Sandin v. Conner*, 515 U.S. 472, 479 n.4, 115 S.Ct. 2293, 2297 n.4, 132 L.Ed.2d 418 (1995) (internal quotations omitted). "So long . . . as the punishment is within the normal limits or range of custody which the conviction has authorized the State to impose, there is no violation of a protected liberty interest conferred by the Due Process Clause." *Id.* (citations and internal quotations omitted).[1]

Where the Due Process Clause does not create a liberty interest, the government can create one by statute. *Id.* A statute may create a liberty interest that is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*, *quoting Sandin*, 115 S.Ct. at 2300. The hallmark of a statute that does not create a liberty interest is discretion. As the Fifth Circuit observed in *Richardson*:

> Where the statute grants the prison administration discretion, the government has conferred no right on the inmate. Thus, a protected liberty interest exists only when a regulation uses mandatory language to place a substantive limit on official discretion. A unilateral expectation of certain treatment is insufficient; a prisoner must have a legitimate claim of entitlement to it.

*Id.* (citations and internal quotations omitted).

---

[1] Examples of punishment that implicate a constitutionally protected liberty interest are the involuntary transfer of a prisoner to a mental hospital for treatment and the involuntary administration of psychotropic drugs to a mentally ill prisoner. *See Vitek v. Jones*, 445 U.S. 480, 493-94, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980).

Petitioner does not allege that the Due Process Clause itself creates a liberty interest in his transfer to home confinement.  Instead, petitioner points to two statutes, 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c), in support of his argument that prison authorities are prohibited from categorically denying transfer requests made by inmates who are not within the last 40 to 50 days of their sentence.  The court will examine each statute in turn.

A.

Section 3621(b) provides, in pertinent part:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--
>
> (1)     the resources of the facility contemplated;
>
> (2)     the nature and circumstances of the offense;
>
> (3)     the history and characteristics of the prisoner;
>
> (4)     any statement by the court that imposed the sentence--
>
> > (A)     concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> >
> > (B)     recommending a type of penal or correctional facility as appropriate; and
>
> (5)     any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).  Although the Fifth Circuit has not decided the issue, four circuit courts and three judges in this district have held that section 3621(b) requires an individualized review of all five statutory factors with respect to placement in a halfway house.  *See, e.g. Wedelstedt v. Wiley*, 477 F.3d 1160, 1167-68 (10th Cir. 2007); *Levine v. Apker*, 455 F.3d 71, 85-87 (2d Cir. 2006); *Fults*

*v. Sanders*, 442 F.3d 1088, 1092 (8th Cir. 2006); *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 246 (3d Cir. 2005); *Grote v. Berkebile*, No. 3-07-CV-0863-B, 2007 WL 4302933 at *4-6 (N.D. Tex. Dec. 5, 2007); *Briggs v. Van Buren*, No. 4-06-CV-800-Y, 2007 WL 3019238 at *3-4 (N.D. Tex. Oct. 16, 2007); *Mihailovich v. Berkebile*, No. 3-06-CV-1603-N, 2007 WL 942091 at *9-10 (N.D. Tex. Mar. 28, 2007). *But see Tischendorf v. Van Buren*, ___ F.Supp.2d ___, 2007 WL 4269878 at *4 (N.D. Tex. Dec. 5, 2007), *appeal filed*, No. 07-11262 (Dec. 7, 2007) (holding that BOP decision to categorically limit use of Community Correction Centers as pre-release custody facility is not contrary to congressional intent). However, no court has ever extended that holding to placement in home confinement. Indeed, *Mihailovich* expressly rejected the very argument advanced by petitioner, holding that section 3621(b) provides no statutory authority for the BOP to designate home confinement as a place of imprisonment "because home confinement falls outside the boundaries of a 'penal or correctional facility[.]'" *Mihailovich*, 2007 WL 942091 at *10; *see also Grote* 2007 WL 4302933 at *6.

C.

Nor does 18 U.S.C. § 3624(c) require prison authorities to transfer petitioner to home confinement. That statute provides, in pertinent part:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection *may* be used to place a prisoner in home confinement.

18 U.S.C. § 3624(c) (emphasis added). There is no mandatory language in this statute that requires prison authorities to allow prisoners to serve part of their sentence on home confinement. The only requirement is to assure that the prisoner spends a reasonable part of the last 10% of his sentence

"under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community." *Id.* That opportunity has been afford to petitioner, who is serving the final months of his sentence in a halfway house. There simply is no constitutional right to placement on home confinement at any time during a term of imprisonment. *See, e.g. Chimney v. Jeter*, No. 4-05-CV-647-Y, 2006 WL 954028 at *2 (N.D. Tex. Apr. 11, 2006) (citing cases) (holding there is no constitutional right to placement in a Community Correction Center, or "CCC").[2]

## RECOMMENDATION

It plainly appears from the face of the pleadings that petitioner is not entitled to relief. Accordingly, his application for writ of habeas corpus should be summarily denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

---

[2] Petitioner also cites BOP Program Statement 7320.01 to support his request for transfer to home confinement. However, this policy statement merely establishes procedures and eligibility requirements for the referral and placement of pre-release inmates in home confinement programs. Nothing in the policy statement mandates prison authorities to transfer an inmate to home confinement. *See, e.g.* BOP PS 7320.01(11) ("When an inmate has employment and a place to live and has demonstrated that he/she no longer requires the level of accountability and services the CCC provides, the inmate *may* be placed on home confinement.") (emphasis added); BOP PS 7320.01(12) ("[A]n inmate who does not require CCC transitional services *may* be placed directly on home confinement from an institution.") (emphasis added); BOP PS 7320.01(12)(a) (inmate *may* be considered eligible for direct placement on home confinement if he or she has no public safety factors, had excellent institutional adjustment, has a stable residence with a supportive family, has confirmed employment, and has little or no need for services of a CCC).

DATED: January 3, 2008.

_____
JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE